Helen HORTON

v.

TOWN OF BENNINGTON.

Civ. No. 84–47.

United States District Court,
D. Vermont.

March 8, 1985.

Jane A. Adams, Bennington, Vt., for plaintiff.

Bennett Evans Greene, Milton, Vt., for defendant.

## OPINION AND ORDER

BILLINGS, District Judge.

### INTRODUCTION

Plaintiff brings this action pursuant to Title VII of the Civil Rights Acts of 1964. 42 U.S.C. § 2000e et seq. on account of discrimination with respect to compensation in employment on the basis of plaintiff's sex.

On November 10, 1983, the Notice of Right to Sue was issued by the Civil Rights Division of the Department of Justice (plaintiff's exhibit 46).

FACTS

The defendant, a municipal corporation located in the County of Bennington, State of Vermont, employed the plaintiff on January 2, 1979, as a bookkeeper in the municipal office at a salary of $3.50 per hour. At that time her duties were primarily to help the then Town Manager with the budget, and to aid in the preparation of reports for the state and federal governments for the years 1977 and 1978. At the same time Michael Zinna was Town Accountant, (See defendant's exhibit C), and had been for approximately two years. After Town Meeting, 1979, there being dissatisfaction with the performance of both the Town Manager and Town Accountant, the Town Accountant and Town Manager resigned and thereupon Edward Lamb, a former Town Manager, was employed as temporary Town Manager while the Selectmen advertised and searched for a permanent manager.

On March 26, 1979, the former Town Accountant finally left the office and the plaintiff, after talking with the Selectmen, was designated as bookkeeper, and was asked to oversee the accounting department, which consisted of two other women. Plaintiff did not wish the job as Town Accountant, but having knowledge that the books were far behind in entries, she agreed to help out for a period of three weeks. As of April, 1979, Mr. Lamb became Acting Town Manager, no one having been hired as permanent Town Manager, and, no one having been hired as Town Accountant, plaintiff agreed to continue in her present job, and the new Town Manager decided to maintain the status quo and not to hire a Town Accountant.

On April 3, 1979, the temporary Town Manager indicated to the Selectmen that a Town Accountant should be replaced, but in the meantime designated the Town Treasurer to oversee the accounting office. (Plaintiff's exhibit 14.) As of April 8, 1979, plaintiff's salary was increased to $4.50 per hour. Her duties at that time consisted of keeping the books, making journal entries and preparing monthly summaries for the Town Manager and Selectmen, but did not consist of any analysis of the accounts or making recommendations in connection therewith.

Although the temporary Town Manager advertised for a position of permanent Town Manager in May or June, 1979, he only received a few responses and he interviewed two individuals. None had the qualifications and it was then decided not to hire a Town Accountant, so the plaintiff continued as bookkeeper. At that time plaintiff didn't request to be named Town Accountant, or request the salary of the former Town Accountant. The Town Manager, by memoranda, advised all persons in the Town office that plaintiff was the nominal person in charge of the accounting department (Defendant's exhibit F). Mr. Lamb felt plaintiff was doing a competent job as bookkeeper, and on his recommendation her salary, as of July 1, 1979, was raised to $5.00 per hour.

As of September 1, 1979, Robert Mattison became permanent Town Manager. He decided not "to shake the tree", so continued plaintiff as bookkeeper and secured accounting services from the accounting firm that was normally employed to audit the Town's books. The Town Manager continued plaintiff's employment as head bookkeeper, but in recognition of her performance, and without changing the duties to which she was assigned, recommended to the Selectmen to confer upon her the title of Town Accountant, and to either pay her a salary of $12,500 per annum, or at the rate of $6.00 per hour. As of November 27, 1979, plaintiff was appointed Town Accountant at a salary of $12,500 per annum (plaintiff's exhibits 27 and 42).

Subsequent thereto, plaintiff on several occasions inquired of the Town Manager why she was not receiving the same salary as the prior Town Accountant. The Town Manager based plaintiff's salary on her

prior experience, only as a bookkeeper, the accounting now being done by the Certified Public Accountants, plaintiff's personality problems with others in the accounting department, particularly one individual, the fact that plaintiff was not qualified to give analysis or other work generally performed by an accountant, and the fact that she was unable to do so because of her abilities.

On July 1, 1980, at the time all other town employees received raises, plaintiff's salary was raised to $14,650, without a change in duties. The plaintiff discussed her salary with the Town Manager, and again stated that she should have the same salary as the prior Town Accountant—Zinna. The Town Manager indicated that maybe she would get the salary raise by the end of December, 1980. In early December, 1980, plaintiff advised that she would resign effective December 31, 1980. Although due to the fact that at that time there was no one to take her place, she made an agreement with the Town Manager to stay on part time, still continuing with her same duties at an agreed salary of $80 per week (plaintiff's exhibit 43). The salary was set by agreement in consideration of not jeopardizing and losing plaintiff's social security benefits. Plaintiff continued to work part time until May 6, 1981.

At the time of her formal termination in December, 1980, she received compensation for 58¼ hours comp. time, four weeks vacation time, accumulated sick leave, and two full weeks pay for the weeks of December 27, 1980 and January 3, 1981 (she having worked full time during those two weeks), minus deductions for old age benefit, federal and state withholding, and Christmas Club, so that she received a net payment of $2,605.27, despite the fact that the Town had no policy to pay salaried employees comp. time, sick leave or vacation time.

In April, 1981, the Town hired a Town Accountant with many years of experience and training in accounting, (defendant's exhibit D) at a salary of $15,000. Plaintiff again contacted the Town Manager and was upset that the newly hired Town Accountant was receiving a salary more than she was paid. The Town Manager discussed this matter with her and pointed out

that the new employee's training and experience were more than plaintiff's; in that plaintiff's training and experience consisted mainly of secretarial and bookkeeping positions. The only credible evidence as to the salary disparity in employment, based on an inference of gender discrimination, is the fact that the prior Town Accountant, and the successor Town Accountant, received a higher level of salary than plaintiff, although the credible evidence clearly shows that the duties performed and required by the prior Town Accountant and the successor Town Accountant were completely different than those undertaken by plaintiff.

DISCUSSION

■■■ To prove her claim of sex-based wage discrimination, plaintiff must prove a prima facie case of disparate treatment by the preponderance of the evidence. *Spaulding v. University of Washington,* 740 F.2d 686 (9th Cir.) *cert. denied,* —— U.S. ——, 105 S.Ct. 511, 83 L.Ed.2d 401 (1984). The burden of production then shifts to the defendant to articulate some legitimate, non-discriminatory reason for the pay disparity. Finally, should the defendant carry this burden, the plaintiff must then have an opportunity to prove, by a preponderance of the evidence, that the legitimate reasons offered by the defendant were not its real reasons, but were a pretext for discrimination. *See Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McCluney v. Joseph Schlitz Brewing Company,* 728 F.2d 924 (7th Cir.1984). The ultimate burden of persuading the trier of fact that defendant intentionally discriminated against plaintiff, remains at all times with the plaintiff. *Burdine, supra,* at 253, 101 S.Ct. at 1093.

■■■ The disparity of salary between males and females alone is insufficient to establish sex based wage discrimination. *Spaulding, supra,* at 700. Discriminatory intent may not be inferred from existence of wage differences between jobs that are only similar, the comparability of duties and job description can be relevant to determine if one can infer discriminatory animus in a disparative wage case, but plain-

tiff must still prove intent to discriminate. *Spaulding v. University of Washington, supra,* at 700–701. In disparative treatment cases, direct or circumstantial proof of discriminatory motive is proper. *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396 (1977). Evidence of substantially equal work is relevant in making this determination. Each case, in order to support an inference that plaintiff was discriminated against, depends on its own facts. *Spaulding v. University of Washington, supra,* at 700. *Peters v. Lieuallen,* 693 F.2d 966, 969 (9th Cir.1982).

Here the credible evidence shows that although the title of Town Accountant was conferred upon the plaintiff, her duties were that of a bookkeeper, as contrasted to the duties of her predecessor or successor, and that her salary scale was based on the duties assigned, and her ability. There is no credible evidence that there was wage discrimination based on sex. Plaintiff has merely shown the disparative salaries between herself and her predecessor and successor, and this is insufficient as a matter of law. Plaintiff has failed in her burden of proof. Judgment entered for the defendant.

SO ORDERED.