Judith L. LEVEEN, Plaintiff,

v.

STRATFORD HOUSING AUTHORITY, Stratford Housing Authority Board of Commissioners, Edwin Carey, Anthony Testi, Marcel Theriault, Harry Weide, Fred R. Lucas, Robert Burns, Nicholas Vosgerichian, Anthony Mannio, George Guman, and John B. Roughan, Defendants.

Civ. No. B–82–564 (TFGD).

United States District Court, D. Connecticut.

Jan. 13, 1986.

Barbara G. Lifton, Bridgeport, Conn., for plaintiff.

Kevin A. Coles, Cotter, Cotter & Sohon, William J. Kupinse, Goldstein & Peck, Bridgeport, Conn., for defendants.

## MEMORANDUM OF DECISION

DALY, Chief Judge.

The plaintiff, Judith L. Leveen, brought this action against defendants Stratford Housing Authority (S.H.A.), its Board of Commissioners, and Edwin Carey, Anthony Testi, Marcel Theriault, Harry Weide, Fred R. Lucas, Robert Burns, Nicholas Vosgerichian, Anthony Mannio, George Guman, and John B. Roughan on September 24, 1982, alleging gender-based employment discrimination and retaliation for having filed a complaint with the Equal Employment Opportunity Commission (EEOC) and the Connecticut Commission on Human Rights and Opportunities (CCHRO), both in violation of 42 U.S.C. § 2000e *et seq.* (Title VII). More specifically, plaintiff, by way of her third amended complaint of October 21, 1985, alleged defendants engaged in a pattern and practice of discrimination, depriving her of equal treatment in the terms and conditions of her employment and in matters of hiring, job assignment, promotion, demotion, transfer, pay, training, and discharge. Plaintiff's Third Amended Complaint at ¶ 10. Plaintiff further alleged under 42 U.S.C. § 1983 deprivation of her rights to due process and equal protection and deprivation of rights secured by the Equal Pay Act, 29 U.S.C. § 206(d). Trial began on October 22, 1985 and concluded on October 31, 1985 with the jury returning verdicts in favor of the defendants on plaintiff's § 1983 and Equal Pay Act claims. The Court then asked the parties to submit proposed findings of fact and conclusions of law addressing plaintiff's claim for relief under Title VII. Having reviewed these submissions and the evidence introduced at

trial, the Court hereby holds that defendants' actions did not violate Title VII. In support of its holding, the Court enters the following findings of fact and conclusions of law.

### FINDINGS OF FACT

(1) Plaintiff is a female and was employed by the defendant when the alleged discrimination occurred. Defendant is an employer engaged in an industry affecting commerce [1] and, when the alleged statutory violations took place, employed more than fifteen employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

(2) The plaintiff was hired as an accountant/auditor by the S.H.A. on August 27, 1979 earning $182.69 per week. At that time, Edward Carey, then S.H.A. Executive Director, explained that in light of the budget, he could not afford to pay her more. Plaintiff later received numerous salary increases, some of which were retroactive and necessitated by later state approval of S.H.A. budgets and others which were based on merit. Plaintiff also received one salary reduction when her acting office manager duties were removed in November, 1981. The actual reduction in pay did not occur until approximately sixty days after such duties were removed and was not retroactive. Upon her termination, plaintiff was earning $299.20 a week.

(3) During plaintiff's term of employment with the S.H.A., plaintiff was called upon to perform additional duties as acting officer manager. Plaintiff also performed some of the duties that the Deputy/Assistant Director would otherwise perform. In fact, plaintiff applied for the position of Deputy Director, but was not chosen. George Guman was eventually selected based on his qualifications, *see* Plaintiff's Exhibit # 20, and in light of the serious problems plaintiff had confronted in performing her duties as an accountant. Various political factors also played a role in Guman's hiring, as well as the fact that Guman had in previous positions been responsible for supervising full and part-time employees.

(4) Although plaintiff had received a bachelors degree in accounting, accounting for a public housing authority required knowledge plaintiff had not previously acquired. The defendant S.H.A. provided a fee accountant Arthur D'Amato to train the plaintiff and plaintiff was also given access to various accounting manuals on public housing. While several male employees were permitted to attend training sessions outside of the S.H.A.'s physical plant, such employees performed different duties with the S.H.A. and were not called upon to perform the accounting duties for which plaintiff was initially hired.

(5) Male employees in other positions received pay raises during plaintiff's tenure with the S.H.A. The plaintiff, however, could not testify as to whether such raises were warranted, since she had never performed such employees' duties. Also, at least one male employee's duties were reduced during the time period at issue without a corresponding decrease in pay, a managerial decision about which plaintiff likewise could not provide persuasive testimony in her favor since she was unfamiliar with such employee's daily duties. Salaries of other males were reduced when their duties were reduced as, for example, the salaries of George Guman and Robert Hargus.

(6) On January 27, 1982, plaintiff filed a charge with the CCHRO and simultaneously with the EEOC alleging sex discrimination in the terms and conditions of her employment by denying her equal pay for equal work. Plaintiff's Exhibit # 1. The EEOC on June 25, 1982 issued plaintiff a notice of right to sue, having concluded that no reasonable cause was found to be-

---

**1.** 42 U.S.C. § 2000e(h) states that "industry affecting commerce" includes any governmental industry, business, or activity. The Court finds that the defendant S.H.A. is clearly such a governmental industry in that the S.H.A. was created to administer and maintain state and federally assisted public housing in the Town of Stratford in accordance with state and federal law.

lieve that the allegations made in her charge were true. Plaintiff's Exhibit # 3. Plaintiff filed another charge on September 15, 1982, alleging defendant terminated her employment in retaliation for her having filed an unfair labor practice complaint. On July 12, 1983, the EEOC notified plaintiff of her right to sue on that charge without addressing the merits of her claim. Plaintiff's Exhibit # 4.

(7) At a meeting of the Board of Commissioners on February 16, 1982, after the Board had received plaintiff's January 27, 1982 complaint, one commissioner remarked that if he had sent such a letter to his supervisor, he would have fired him. The Board of Commissioners, however, never voted to terminate the plaintiff's employment.

(8) Throughout plaintiff's employment with the S.H.A., plaintiff experienced difficulties in accurately and timely completing her accounting tasks, in part due to the condition of the books when she arrived and the other responsibilities she was asked to assume. The serious accounting problems that arose, however, pertaining to an equipment inventory and state and federal audits eventually caused the S.H.A. and several of its commissioners to call into question plaintiff's abilities as an accountant. In fact, the various state reports the S.H.A. was required to file were replete with accounting errors. The Court need not decide whether blame properly rests with the plaintiff for each error, especially in light of the apparent mismanagement of the S.H.A. and the various accounting errors plaintiff confronted when the S.H.A. first employed her. Plaintiff herself, how-ever, admitted she was responsible for at least some of the errors and plaintiff, as the staff accountant, was ultimately responsible for the books and ledgers of the authority. Such deficiencies in the accounting division of the authority justifiably caused Executive Director John Roughan to seriously doubt whether plaintiff ought to be kept in S.H.A.'s employ and eventually caused Roughan to terminate her, shortly after his arrival at the S.H.A. Roughan cited as his reasons for plaintiff's termination her unsatisfactory performance in completing various reports and compiling the necessary data to construct an equipment inventory. *See* Defendants' Exhibit # 513. Roughan further testified that when he began as Executive Director he sought to treat plaintiff without regard to prior difficulties she had had with the S.H.A. and that he knew little about the charge she had filed with the CCHRO and EEOC. Plaintiff, however, was constantly dissatisfied, bitter, and uncooperative. It appears her negative attitude also precluded Roughan from establishing a satisfactory relationship with her in her role as an accountant. Finally, Roughan testified that plaintiff appeared unwilling to accept responsibility for problems pertaining to her accounting. Plaintiff's termination occurred in August, 1982.

## CONCLUSIONS OF LAW

(1) For purposes of Title VII, the plaintiff is an "employee" as defined in 42 U.S.C. § 2000e(f) and the defendant S.H.A. is an "employer" as defined in 42 U.S.C. § 2000e(b).[2] All other conditions precedent

---

2. "The term 'employee' means an individual employed by an employer...." 42 U.S.C. § 2000e(f). "The term 'employer' means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding year." 42 U.S.C. 2000e(b). The defendant S.H.A. claims it employed fewer than fifteen employees during 1979 and 1980 if Comprehensive Employment Training Administration (CETA) employees are not included in the count and, therefore, its status as an employer during those years does not satisfy the jurisdictional requirements of Title VII. The Court rejects defendant's argument at this time as to whether those involved in the CETA program constitute employees for purposes of Title VII, since it decides in defendant's favor on other grounds. The Court reserves further decision as to what analysis ought to be applied in deciding whether a person constitutes an employee for Title VII purposes until the issue presents itself in an appropriate case. *See e.g., Dumas v. Town of Mount Vernon,* 436 F.Supp. 866, 873 (S.D.Ala.1977), *modified on other grounds,* 612 F.2d 974 (5th Cir. 1980); *Armbruster v. Quinn,* 32 Fair Empl.Prac. Cas. (BNA) 369, 376 (6th Cir.1983) ("According-

to jurisdiction including exhaustion of administrative remedies have been met.

■ (2) Plaintiff's complaint, post-trial findings, and the evidence presented at trial indicate that plaintiff has chosen to prosecute her Title VII claim under a theory of disparate treatment, *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), rather than under a theory of disparate impact or effect, *see Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). Specifically, plaintiff claims discriminatory treatment in defendants' failing to promote her to the position of Deputy Director in 1981, reducing her pay in January, 1982, and discharging her in August, 1982. Plaintiff's Proposed Conclusions of Law at ¶ 2. Plaintiff further claims unequal treatment in such matters as training.

In *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1980), the Supreme Court, quoting from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), outlined the "basic allocation of burdens and order of presentation of proof in a Title VII case alleging discriminatory treatment." *Texas Dept.*, 450 U.S. at 252, 101 S.Ct. at 1093.

(1) The plaintiff bears the burden of proving by a preponderance of the evidence a *prima facie* case of discrimination.

(2) Should the plaintiff succeed in proving her *prima facie* case, the burden then shifts to the defendants who must "articulate some legitimate, nondiscriminatory reason" for such treatment. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824.

(3) If the defendants sustain their burden, the plaintiff must then prove by a preponderance of the evidence that "the legitimate reasons offered by the defendant[s] were not [their] true reasons, but were a pretext for discrimination." *Tex-*

as *Dept.*, 450 U.S. at 253, 101 S.Ct. at 1093–94.

The Court further explained that the "ultimate burden of persuading the trier of fact that the defendant discriminated against the plaintiff remains at all times with the plaintiff.... The *McDonnell Douglas* division of intermediate evidentiary burdens serves to bring the litigants and the court expeditiously and fairly to this ultimate question." *Id.* at 253, 101 S.Ct. at 1093–94.

The plaintiff, to prove a *prima facie* case of discrimination in defendants' failure to promote or otherwise hire her for the Deputy Director position must show: "(1) that she belongs to a protected class...; (2) that she applied for, and was qualified for, a position for which her employer was seeking applicants...; (3) that despite her qualification, she was rejected; *and* (4) that, after her rejection, the positions remained open and thereafter were filled by males." *Sweeney v. Research Foundation of St. U. of N.Y.*, 711 F.2d 1179, 1185 (2d Cir.1983) (emphasis added). Plaintiff, as a female, clearly belongs to a protected class. In light of plaintiff's performance as an accountant, however, the Court cannot find by a preponderance of the evidence that plaintiff was qualified for the position. Absent such a finding, plaintiff's *prima facie* case must fail.

Even if this Court were to find, however, that plaintiff was qualified for the Deputy Director position, was rejected, and the position was filled by a male, defendants have satisfied their burden in providing nondiscriminatory reasons for their actions. In this regard, the Second Circuit, in light of *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), requires that the "evidence produced by the employer ... be objective and competent." The defendants will have met their burden if the evidence setting forth their reasons for plaintiff's rejection "raises a genuine issue of fact as to whether [they] discriminated." *Texas*

ly, we hold that the term employee in Title VII 'must be read in light of the mischief to be

corrected and the end to be attained.' ") (cites omitted).

*Dept.,* 450 U.S. at 254, 101 S.Ct. at 1094; *Sweeney,* 711 F.2d at 1185.

Defendants introduced sufficient evidence at trial to meet their burden. Certainly, plaintiff's shortcomings in timely and accurately completing her accounting tasks raised serious doubts as to whether she was capable of fulfilling the duties of Deputy Director. Also, the political factors involved in hiring Guman provide further support that a genuine issue of fact exists as to whether defendants' actions were in fact gender-related. Adding to the calculus is the fact that Guman had in previous positions gained valuable experience in supervising full and part-time employees.

Defendants having sustained their burden, the Court finds that despite her evidence on Guman's shortcomings, plaintiff has failed to prove by a preponderance of the evidence that the defendants' articulated reasons are mere pretext for discrimination.

> This burden now merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination. She may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence."

*Texas Dept.,* 450 U.S. at 256, 101 S.Ct. at 1095. Had plaintiff been a model employee with the substantial prior experience as a supervisor Guman had acquired, the Court might be more inclined to rule in her favor. Absent such evidence, however, the Court cannot conclude that the defendants were more likely motivated by a discriminatory reason or that their explanation is unworthy of credence. Plaintiff's prayer for relief, then, on this ground is denied.

■ (3) Plaintiff further alleges discriminatory treatment in defendants' reducing her pay in January, 1982, approximately sixty days following the removal of her duties as acting officer manager. Again, a plaintiff alleging disparate treatment is required first to establish her *prima facie* case which, as this Court recently indi-

cated, requires a showing that she belongs to a protected class and was treated differently than similarly-situated males. *Coles v. Cilco Terminal Co., Inc.,* N–81–254 (D.Conn. Nov. 12, 1985); *see also Martin v. Citibank, N.A.,* 762 F.2d 212, 217 (2d Cir. 1985). While plaintiff, as a female, belongs to a protected class, she points to no similarly-situated males who, after having certain duties removed, did not receive a corresponding reduction in pay. Plaintiff only points to individuals such as the "working foreman" who performed duties quite different than those plaintiff performed. At least one Second Circuit District Court has noted that:

> [t]he disparity in salary between males and females alone is insufficient to establish sex based discrimination. *Spaulding* [*v. University of Washington,* 740 F.2d 686 (9th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 511 [83 L.Ed.2d 401] (1984) ], *supra,* at 700. Discriminatory intent may not be inferred from existence of wage differences between jobs that are only similar, the comparability of duties and job description can be relevant to determine if one can infer discriminatory animus in a disparative wage case, but plaintiff must still prove intent to discriminate.

*Horton v. Town of Bennington,* 603 F.Supp. 1254, 1256, 1257 (D.Vt.1985).

Comparing plaintiff's job description and duties to those of the males plaintiff seeks to compare, the Court finds there is insufficient evidence to infer discriminatory animus. The plaintiff herself testified that she was unfamiliar with the daily duties of such allegedly similarly-situated males. Also, absent some evidence of untruthworthiness, it cannot be denied that the EEOC "no reasonable cause determination" provides some evidence that plaintiff's allegation of not receiving equal pay for equal work is without merit. *See* Fed.R.Evid. 803(8)(C).

Even if this Court were to find that plaintiff has established her *prima facie* case, however, the defendants articulated a legitimate, non-discriminatory reason for

**234**

its decision which dispels any doubt as to whether plaintiff was the target of discrimination. The defendants argue that unless compelling circumstances exist in an individual employee's case, when employees' duties are reduced, employees' salaries are likewise reduced. The Court finds this argument persuasive. Absent stronger evidence of pretext, the Court finds that plaintiff has failed to show by a preponderance of the evidence that the reduction in her pay was gender-related. Such a prayer for relief on this claim must also be denied.

■ (4) Plaintiff further predicates her Title VII claim on a theory that males allegedly received job training while females did not. Defendants contend, on the other hand, that plaintiff has failed to establish a *prima facie* case that job training was provided to males and not to females employed by the S.H.A. during the time period in question. Plaintiff did in fact receive job training. While she may have been denied the opportunity to attend out-of-town seminars, plaintiff has not provided the Court with evidence of males *similarly-situated* who were permitted to attend such seminars. Plaintiff testified that two males, one in the position of "Section 8 Coordinator" and later in the position of "Leasing Officer" and the other in the position of "Deputy Director", were permitted to attend certain training seminars. To sustain her burden in proving a *prima facie* case, plaintiff must show a difference in training between herself and similarly-situated males which would support the inference that such a difference was gender-related. The Court concludes that there is insufficient evidence on this aspect of plaintiff's claim to create the rebuttable presumption *McDonnell Douglas* contemplates and, accordingly, plaintiff's claim for damages on this ground is denied.[3]

■ (5) Plaintiff further seeks relief pursuant to Title VII and under a theory of disparate treatment based upon her August, 1982 discharge. Plaintiff's burden of proving a *prima facie* case for discriminatory termination requires that she show that (1) she is a member of a protected class; (2) she was qualified for the position held and her job performance was satisfactory; (3) she was discharged and; (4) following her discharge, "the position remained open and the employer continued to seek qualified applicants from persons of complainant's qualifications." *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824; *see Meiri v. Dacon*, 759 F.2d 989, 995 (2d Cir.1985).

Clearly, plaintiff has sustained her burden in proving the first and third elements. Her proof is unclear under the fourth element, however, since, following her termination, the S.H.A. hired a part-time accountant who later became the full-time comptroller, a position involving both accounting and supervisory responsibilities. The Court need not decide this issue, however, since it finds that plaintiff has failed to prove beyond a preponderance of the evidence that she performed satisfactorily and was otherwise qualified for the position. "In determining whether an employee's job performance is satisfactory, courts may—as they often must—rely on the evaluations rendered by supervisors.... [T]he ultimate inquiry is whether an employee's performance 'meets his employer's legitimate expectations.' *Hugn v. Koehring Co.*, 718 F.2d 239, 244 (7th Cir.1983)."

**3.** Plaintiff also points to a male employed in the position of comptroller and employed *following* her termination who has attended two seminars each year. While plaintiff's standing to use such evidence is questionable in that it pertains to a period subsequent to her employment with the S.H.A., the Court concludes that this evidence would not support a ruling in plaintiff's favor. During the period in which plaintiff may have sought further training with the S.H.A., the organization was plagued with various budget problems and instances of mismanagement which often preclude employees from attending out-of-town seminars. Moreover, the evidence indicates that the position of comptroller includes additional duties and calls for expertise beyond that required for the position of staff accountant. Finally, the record reflects that plaintiff did, in fact, receive training. The fact that a male now in S.H.A.'s employ attends two seminars a year does not adequately support a finding that defendant's refusal to allow plaintiff to attend an out-of-town seminar was gender-related.

*Meiri,* 759 F.2d at 995. Roughan cited as his reasons for plaintiff's termination her unsatisfactory performance in completing various reports and compiling the data necessary to construct an equipment inventory. It was a legitimate expectation that as the staff accountant plaintiff would timely and accurately complete the various reports which she was required to file. Also, plaintiff herself admitted that she was responsible for at least some of the accounting errors. The Court finds, then, that there is insufficient evidence to support plaintiff's *prima facie* case.

Assuming the Court were to find otherwise, however, the defendants articulated sufficient non-discriminatory reasons to sustain their burden in rebutting plaintiff's *prima facie* case. Roughan testified that plaintiff was constantly dissatisfied, bitter, and uncooperative. Moreover, the negative attitude plaintiff appears to have exhibited precluded Roughan, the Executive Director, from establishing a satisfactory relationship with the plaintiff as the S.H.A. accountant, a relationship crucial to the proper functioning of a housing authority. *See Meiri,* 759 F.2d at 995 (inability to get along with co-workers represents a legitimate reason for an employment decision). In addition, the fact that plaintiff appeared unwilling to accept responsibility for problems pertaining to her accounting is further indicia of a legitimate reason for her dismissal. These facts along with the various reasons Roughan cited in plaintiff's termination letter militate against a finding of discrimination.

The Court further rejects plaintiff's claim that since males committing accounting errors were not dismissed, the reasons Roughan cited for her termination are mere pretext for discrimination. Plaintiff's negative attitude and the fact that the new Executive Director was unable to establish a successful working relationship with her sufficiently distinguish plaintiff from those males plaintiff alleges were similarly-situated. The Court thus finds that plaintiff has failed to establish by a preponderance of the evidence that defendants' proffered reasons for her termination are pretext.

So finding, the Court denies plaintiff's prayer for relief on this ground, as well.

■ (6) Finally, plaintiff's Title VII claim also rests upon a theory of retaliation in that defendant terminated plaintiff because plaintiff filed a charge with the CCHRO and EEOC on January 27, 1982. As with the disparate treatment claims, the *McDonnell Douglas* burden of proof also applies to plaintiff's retaliation claim. *Choudhury v. Polytechnic Institute of New York,* 735 F.2d 38, 44 (2d Cir.1984). To establish a *prima facie* case of retaliation, the plaintiff must show protected activity under Title VII known by the alleged retaliator, an employment action disadvantaging the person engaged in protected activity, and a causal connection between the first two elements, "that is, a retaliatory motive playing a part in the adverse employment actions." *Grant v. Bethlehem Steel Corp.,* 622 F.2d 43, 46 (2d Cir.1980); *Coles v. Cilco Terminal Co., Inc.,* N–81–254 (D.Conn. Nov. 12, 1985).

The Court first addresses whether only defendant Roughan or all named defendants might constitute the alleged retaliator in plaintiff's case. While one commissioner at a February, 1982 Board meeting following plaintiff's EEOC charge remarked that if he had sent such a letter to his supervisor, he would have been fired, the Board of Commissioners never voted to terminate plaintiff's employment. Rather, Executive Director Roughan terminated plaintiff soon after his arrival at the S.H.A. and nearly six months after this Board meeting. The Court finds that in light of the testimony admitted at trial, Executive Director John Roughan decided to terminate plaintiff and not the S.H.A. Board of Commissioners. Any claim for retaliation then must rest on the actions of John Roughan who, as the Executive Director, had the authority to hire and fire S.H.A. employees.

Under the first element of a retaliation claim, plaintiff must show that the alleged retaliator knew of plaintiff's protected activity. Although Roughan did not know the details of plaintiff's charge, he was

aware plaintiff had filed a charge with the EEOC and CCHRO. The Court finds this is sufficient knowledge to meet the first element of plaintiff's *prima facie* case. Plaintiff's termination further satisfies the second element as to whether there was an adverse employment action disadvantaging the person engaged in protected activity.

Plaintiff's *prima facie* case fails, however, in that the Court finds that there is insufficient evidence of a causal connection between plaintiff's EEOC and CCHRO charge and her later termination. Defendant Roughan testified that he was only vaguely aware of plaintiff having filed a charge. He further indicated that when he joined the S.H.A. he sought to treat plaintiff without regard to prior difficulties she had had with the authority. Plaintiff nevertheless was bitter, uncooperative, and dissatisfied in her position. As the Court previously noted, it is crucial that the Executive Director and Accountant establish a satisfactory relationship if a housing authority is to function properly. The defendant, however, was unable to establish such a relationship with the plaintiff in view of her negative attitude. Finally, plaintiff's failure in timely and accurately completing various reports and in compiling the necessary data to construct an equipment inventory buttresses defendant's claim that there were legitimate non-discriminatory reasons for plaintiff's eventual discharge. The Court concludes that in light of the above, plaintiff has failed to establish by a preponderance of the evidence a causal relationship between the EEOC and CCHRO charge and plaintiff's termination. Rather, defendant based his decision on legitimate, non-discriminatory reasons without regard to a charge plaintiff had filed prior to defendant's employment with the S.H.A. Absent sufficient evidence of a *prima facie* case, plaintiff's retaliation claim must fail.

**4.** Plaintiff, in her Third Amended Complaint, also seeks relief for alleged discrimination in matters of job assignment, demotion, and transfer. The Court concludes there is insufficient evidence to support these various other claims. Indeed, plaintiff does not even address these

Having found that defendants did not violate Title VII under a theory of disparate treatment[4] or retaliation, plaintiff's claim for relief is DENIED.[5] Judgment shall enter accordingly.

issues in her proposed findings of fact and conclusions of law.

**5.** While there is a pending claim for attorney fees, it is rendered moot by this decision.