Marilyn D. **KNIGHT**

v.

G.W. **PLASTICS, INC.**

Civ. No. 94–CV–227.

United States District Court,
D. Vermont.

Oct. 5, 1995.

John D. Shaw, Rutland, VT, for plaintiff.

William H. Meub, III, Rutland, VT and Thomas S. Gill, Esq., Buffalo, NY, for defendant.

*RULING ON MOTION FOR SUMMARY JUDGMENT (paper 22)*

MURTHA, Chief Judge.

For 23 years, G.W. Plastics, Inc. employed plaintiff Marilyn Knight. After her retirement, Ms. Knight learned that G.W. Plastics had offered to pay her male replacements thousands of dollars more than they had paid her. Accordingly, the plaintiff contends that, during her employment, G.W. Plastics discriminated against her based upon her sex in violation of the Equal Pay Act and Title VII of the Civil Rights Act of 1964. The defendant has moved for summary judgment. For the reasons set forth below, the defendant's Motion for Summary Judgment is DENIED.

### I. Background

As the party moving for summary judgment, the defendant has the initial burden of informing the Court of the basis for its motion and of identifying those parts of the record which it believes demonstrate the absence of a genuine issue of material fact. *See Latimer v. Smithkline and French Laboratories,* 919 F.2d 301, 303 (5th Cir.1990) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Where, as here, a motion for summary judgment is supported by affidavits or other documentary evidence, the party opposing that motion must set forth specific facts which show there is a genuine, material issue for trial. *See King Service, Inc. v. Gulf Oil Corp.,* 834 F.2d 290, 295 (2d Cir.1987). Accordingly, the plaintiff must come forward with enough evidence to support a verdict in her favor. She cannot defeat the defendant's motion merely by presenting a metaphysical doubt, conjecture or surmise concerning the

facts. *See Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986); *Borthwick v. First Georgetown Securities, Inc.,* 892 F.2d 178, 181 (2d Cir.1989). Only disputes over facts which might affect the outcome of the suit under the governing law preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

Upon review of the submissions of the parties, and solely for the purpose of deciding the instant motion, the Court finds the following material facts. *See* Local Rule 5(c)(1)(B) ("All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.") From late 1969 through 1992, the plaintiff was employed at the company currently known as G.W. Plastics, Inc. The plaintiff's complaint is primarily based upon actions which took place after 1983. *See* Plaintiff's Statement of Disputed Material Facts (paper 27) (hereinafter "Plaintiff's Rule 5(c) Statement") at para. 2.

Beginning her career at G.W. Plastics as a secretary, the plaintiff received a series of promotions to positions of increasing responsibility. Throughout her career, the plaintiff received regularly-scheduled merit pay increases and good performance evaluations. By February 1984, she had been promoted to Production Control Supervisor, a management-level position which she held until her retirement in 1992. At the time of her retirement, the plaintiff's salary was $29,786. *See generally* Defendant's Statement of Material Facts Not At Issue (paper 24) (hereinafter "Defendant's Rule 5(c) Statement") at paras. 1–4.

The plaintiff alleges that, during the years immediately preceding her retirement, she occupied a supervisory position which was similar to those occupied by males receiving higher salaries. *See* Plaintiff's Rule 5(c) Statement at para. 3. There is support in the record for her contention that, of those individuals with comparable responsibility, she was paid the least. *See* Morissette De-

position at 24–25; *see also* Riehl Deposition at exhibit 2 (listing employee salaries) (both transcripts appended to paper 28).

The circumstances surrounding her departure from G.W. Plastics also support her discrimination claims. When the defendant looked to fill her position, it offered her male replacements approximately $10,000 more to perform the same job. *See* Plaintiff's Rule 5(c) Statement at para 4. Moreover, when plaintiff's replacement did not meet her former employer's expectations, G.W. Plastics asked her to return. The parties appear to dispute whether G.W. Plastics asked the plaintiff to return permanently or solely as an advisor who would assist her replacement in learning his new job. However, according to Ms. Knight, the defendant again showed discriminatory intent by failing to offer her compensation comparable to that offered her potential male successors. *See* Plaintiff's Rule 5(c) Statement at para. 5.

In response, the defendant argues that the plaintiff's low salary was the result of several factors. For example, when G.W. Plastics was created from its predecessor corporation, Standard Oil Company, the company simply offered all employees of Standard Oil their same salary. Accordingly, the plaintiff's final salary reflects the fact that, years ago, she began her employment at a low salary. *See* Defendant's Rule 5(c) Statement at para. 3.

Moreover, the defendant relies upon the following statistics: First, throughout the company's existence, G.W. Plastics President Frederic A. Riehl, "approved only six increases larger than the one given Ms. Knight in February of 19[8]4 and two of those six were given to other female employees while four were given to men." Defendant's Rule 5(c) Statement at para. 5. Second, the defendant claims "that of the 19 salaried employees who worked for G.W. Plastics from May of 1983 through Ms. Knight's retirement, fourteen were men and five were women" and that "[o]f these only five had a greater percentage increase in salary over the time period than Ms. Knight and two of the five who had greater percentage increase were women." Defendant's Rule 5(c) Statement at para. 7.

Regarding the higher pay offered to Ms. Knight's replacements, G.W. Plastics notes that the market it encountered upon plaintiff's departure required it to offer candidates a higher salary. *See* Defendant's Rule 5(c) Statement at paras 9–12. The defendant also cites its desire to hire an individual with a Bachelor's degree and more extensive management and computer skills than those possessed by plaintiff. The plaintiff had only completed one year of secretarial studies at a local college and possessed minimal computer skills. By contrast, both replacement candidates possessed the requisite degrees and skills. Accordingly, G.W. Plastics offered to pay them $40,000 and $38,000 respectively. The plaintiff asserts that the defendant's claimed "upgrade" of her former position is a pretext for unlawful discrimination. *See* Plaintiff's Rule 5(c) Statement at para. 6.

## II. Discussion

### A. Equal Pay Act

■ The Equal Pay Act provides that "[n]o employer ... shall discriminate ... between employees on the basis of sex" by paying one lower wages for equal work "which requires equal skill, effort, and responsibility, and which is performed under similar working conditions...." 29 U.S.C. § 206(d)(1). Because the Equal Pay Act provides a form of strict liability, a plaintiff has the burden of proving that she performed equal work for less pay. *See Miranda v. B & B Cash Grocery Store, Inc.,* 975 F.2d 1518, 1533 (11th Cir.1992). However, courts have interpreted "equal work" under the Equal Pay Act to mean "substantially equal." *Id.* In addition, the plaintiff must establish that the defendant paid different wages to employees of opposite sexes for equal work performed under substantially similar conditions. *See Corning Glass Works v. Brennan,* 417 U.S. 188, 195, 94 S.Ct. 2223, 2228, 41 L.Ed.2d 1 (1974).

The plaintiff relies, *inter alia,* on the deposition testimony of her immediate supervisor to demonstrate these elements. On the instant record, the Court finds that the plaintiff has presented enough evidence from which a trier of fact could conclude that she performed substantially equal work to male colleagues who were paid more.

■ The defendant argues that "other reasons" supported its decision to pay the plaintiff less than her male counterparts. The Equal Pay Act permits an employer to justify a wage disparity between employees if the differential is based on "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) ... any other factor other than sex." 29 U.S.C. § 206(d)(1). These four exceptions are affirmative defenses on which an employer must present evidence in response to plaintiff's prima facie showing of wage disparity. *See Corning Glass,* 417 U.S. at 196, 94 S.Ct. at 2229; *Christiana v. Metropolitan Life Insurance Co.,* 839 F.Supp. 248, 251 (S.D.N.Y. 1993).

■ In this Circuit, an employer relying upon "any other factor other than sex" meets its burden by "proving that a bona fide business-related reason exists for using the gender-neutral factor that results in a wage differential." *Aldrich v. Randolph Central School District,* 963 F.2d 520, 526 (2d Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 440, 121 L.Ed.2d 359 (1992). The Court's inquiry centers on whether the employer has "used the factor reasonably in light of the employer's stated purpose as well as its other practices." *Id.* (citations and quotations omitted). On the instant record, the Court is unable to conclude that the defendant has met its burden of demonstrating the existence of "other factors" which excuse plaintiff's prima facie showing of wage discrimination.

For example, the defendant points out that plaintiff started her career at a lower salary. However, the defendant has not adequately explained why salaries established two decades ago, which may or may not have been discriminatorily established in the first instance, justify continued wage disparity once the plaintiff allegedly began her duties as a supervisor in 1984. *Cf. Christiana,* 839 F.Supp. at 253–54 ("Salary retention policies may qualify as valid factors other than sex, absent any showing that the policy was discriminatorily applied or has a discriminatory effect.")

In addition, the defendant contends that the salaries of the individuals it subsequently hired are not dispositive and that the economics of the market place required it to offer plaintiff's replacements more money. Under some circumstances, a changed marketplace provides a legitimate, non-discriminatory reason for differential pay. *See, e.g., Ciardella v. Carson City School District,* 671 F.Supp. 699, 702 (D.Nev. 1987). However, "[t]he employees whose pay is the subject of comparison may hold jobs in succession as well as simultaneously." *Pearce v. Wichita County,* 590 F.2d 128, 133 (5th Cir.1979). Furthermore, in light of the plaintiff's admitted competence and long-term service, defendant's "market" explanation still leaves room for the trier to reach differing conclusions regarding: (1) the company's alleged refusal to offer plaintiff more money to return her position; and (2) the large gap between the plaintiff's final salary and her replacements' starting salary.

Finally, if proven, the defendant's asserted willingness to have the plaintiff continue her job calls into question its current explanation that it needed a college-educated, computer literate person to perform her job. *See Aldrich,* 963 F.2d at 527 ("Once she shows that she is being paid less than men for doing the same work, the employer can rely on an exam to justify that wage differential only if the employer proves that the exam is job-related.") In sum, the record presently before the Court contains factual disputes which a reasonable jury could resolve by concluding that the defendant's explanations are a pretext for discrimination, thereby precluding entry of summary judgment.

### B. Title VII

Under 42 U.S.C. § 2000e–2(a)(1), an employer is prohibited from discriminating from any individual on the basis of sex. To some extent, the Title VII and the Equal Pay Act provide concurrent protections. *See Equal Employment Opportunity Commission v. Madison Community Unit School District No. 12,* 818 F.2d 577, 586 (7th Cir. 1987). However, there are differences. "Under the EPA, the onus is on the employer to establish that the pay differential was premised on a factor other than sex." *Meeks v. Computer Associates International,* 15 F.3d 1013, 1019 (11th Cir.1994). However, the fact that an employer has violated the Equal Pay Act does not automatically implicate a violation of Title VII because, under Title VII, the plaintiff must prove an additional element, that the employer had a discriminatory intent. *Id.* at 1018–19.

To prove her claim of sex-based wage discrimination, plaintiff must prove a prima facie case of disparate treatment by the preponderance of the evidence. . . . The burden of production then shifts to the defendant to articulate some legitimate, non-discriminatory reason for the pay disparity. Finally, should the defendant carry this burden, the plaintiff must then have an opportunity to prove, by a preponderance of the evidence, that the legitimate reasons offered by the defendant were not its real reasons, but were a pretext for discrimination. . . . The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against plaintiff remains, at all times with the plaintiff.

*Horton v. Town of Bennington,* 603 F.Supp. 1254, 1256 (D.Vt.1985) (citations omitted).

As discussed *supra,* viewed in a light most favorable to the non-moving party, the credible evidence suggests that plaintiff's salary lagged behind that of male colleagues performing substantially the same work. Moreover, the defendant has met its burden of articulating nondiscriminatory reasons for plaintiff's salary. Accordingly, the dispositive issue on this motion becomes whether the plaintiff has presented enough evidence from which the trier of fact could conclude that the defendant intentionally discriminated against the plaintiff because of her sex. *See St. Mary's Honor Center v. Hicks,* —— U.S. ——, —— – ——, 113 S.Ct. 2742, 2748–49, 125 L.Ed.2d 407 (1993).

The plaintiff may satisfy the burden of proving the defendant's stated reasons were merely pretextual "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing the employer's proffered explanation is unworthy of credence."

**680**

*Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981). The Supreme Court has further explained plaintiff's burden by finding that the plaintiff must show "both that the reason was false, and that discrimination was the real reason" for the employment decision. *St. Mary's,* ─── U.S. at ───, 113 S.Ct. at 2752 (emphasis omitted); *see Rhodes v. Guiberson Oil Tools,* 39 F.3d 537, 542 (5th Cir.1994) (After *Hicks,* "pretext" means "pretext for discrimination.") Here, the plaintiff has proffered no explicit evidence that the reasons defendant gives for her low salary are false. However, as discussed *supra,* she has presented facts which suggest that the defendant's explanations may be unworthy of credence. Therefore, the defendant's motion for summary judgment on plaintiff's Title VII claim must likewise be denied.

### Conclusion

The defendant's Motion for Summary Judgment is DENIED.

SO ORDERED.