Mary LEMONS et al.,
Plaintiffs-Appellants,

v.

The CITY AND COUNTY OF DENVER et al., Defendants-Appellees,

Equal Employment Advisory Council, Amicus Curiae.

No. 78–1499.

United States Court of Appeals, Tenth Circuit.

Argued Jan. 24, 1980.

Decided April 21, 1980.

Craig S. Barnes, of Craig S. Barnes, P. C., Denver, Colo. (Mary T. Hoagland, of Craig S. Barnes, P.C., and Walter W. Garnsey, Jr., of Kelly, Haglund, Garnsey & Kahn, Denver, Colo., with him on the brief), for appellants.

Earl K. Madsen, of Bradley, Campbell & Carney, Golden, Colo. (Max P. Zall, City Atty., Brian H. Goral, Stanley M. Sharoff, and Thomas A. Gilliam, Asst. City Attys., Denver, Colo., with him on the brief), for appellees.

Walter P. DeForest and Peter D. Post, of Reed, Smith, Shaw & McClay, Pittsburgh, Pa., and Douglas S. McDowell, of McGuiness & Williams, Washington, D.C., on the brief for amicus Equal Employment Advisory Council.

Before SETH, Chief Judge, and HOLLOWAY and McKAY, Circuit Judges.

SETH, Chief Judge.

This is an action brought by several nurses who were employed by the City of Denver. The suit against the City seeks relief for sex discrimination under the Civil Rights Act, under 42 U.S.C. § 1983, and the fourteenth amendment. As it reaches us this is not an equal pay case, 29 U.S.C. § 206(d). A class was certified. The trial court found for the defendant City.

The challenge is to the City classification and pay plan (which covers all its employees) as it applies to plaintiffs. The plan seeks to equalize the pay for City employees with pay for like jobs in the community. The City has established hundreds of job classifications with written descriptions. Among these are "key classes" which are selected because they can be accurately compared with non-City positions, and also City jobs which are useful and significant within the City classifications to evaluate the comparisons so made with the outside jobs. The key classes include "Graduate Nurse I," and "Licensed Practical Nurse I." Key classes are "surveyed" each year to make the comparison with what is going on in the community.

The application of the City method places the City nurses on a pay parity with other nurses in the community. The consequences are the same for all other City classifications.

The basic position of plaintiffs is that they do not want the comparison to be with nurses in the community. They argue that historically nurses have been underpaid because their work has not been properly recognized and because nurses have almost universally been women. Thus the plaintiffs urge that the City should not mirror this condition which prevails in the community and so perpetuate it in the City employment practices. Since the City does follow the community scale they argue that this discrimination is incorporated in the City's plan. Plaintiffs thus assert that their positions should instead be compared with jobs other than nurses. This, they urge, should be accomplished by placing them in a different City classification described as "General Administrative Series." Under their analysis, this would remedy the situation by making the comparison with non-nursing positions.

In summary, the suit is based on the proposition that nurses are underpaid in City positions, and in the community, in comparison with other and different jobs which they assert are of equal worth to the employer. The relationship of pay for nurses to pay for other positions is obviously a product of past attitudes, practices, and perhaps of supply and demand. The record shows that it became a part of the economic balance and relationships prevailing in the community among the myriad of positions in the job market.

This type of disparity was not sought to be adjusted by the Civil Rights Act, and is not within the equal protection clause. The courts under existing authority cannot require the City within its employment to reassess the worth of services in each position in relation to all others, and to strike a new balance and relationship. Also, this cannot be done in total disregard of conditions in the community. The court in *Christensen v. State of Iowa*, 563 F.2d 353 (8th Cir.), said of this: "We do not interpret Title VII as requiring an employer to ignore the market in setting wage rates for genuinely different work classifications."

It thus appears that the plaintiffs are seeking relief far beyond that contemplated by Congress or the Constitution. It is clear that the Denver City officials acted in good faith. The trial court so found and found also that "the City draws no distinction between male and female employees." Plaintiffs are not seeking equality of opportunity in their skills as contemplated by Title VII, and described in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668, but instead would cross job description lines into areas of entirely different skills. This would be a whole new world for the courts, and until some better signal from Congress is received we cannot venture into it.

In the meantime, we can consider *wage* discrimination claims which involve departures from equal pay for equal work. This would be applicable to both the Equal Pay Act and Title VII. We applied the "equal work" concept to Title VII in *Ammons v. Zia Company*, 448 F.2d 117 (10th Cir.). The equal pay for "comparable work" concept had been rejected by Congress in favor of "equal work" in 1962. The Bennett Amendment is generally considered to have the equal pay/equal work

concept apply to Title VII in the same way as it applies in the Equal Pay Act. Our *Ammons v. Zia Company*, 448 F.2d 117 (10th Cir.), was a 1971 sex discrimination decision under Title VII of the 1964 Act, 42 U.S.C. § 2000e. We there said: "Moreover, to establish a case of discrimination under Title VII, one must prove a differential in pay based on sex for performing 'equal' work." The plaintiffs are not seeking relief within this concept, and are instead well beyond the limits there described.

The case before us is much like *Christensen v. State of Iowa*, 563 F.2d 353 (8th Cir.), the opinion which was quoted by the trial court at some length. There, a comparison and equality was sought between women clerical employees at a university with employees in its physical plant department. The same arguments were made there as in the case before us, including the perpetuation of discrimination existing in the market. The Eighth Circuit held that no cause of action had been established and indicated the theory was far beyond the existing statutory law and the application of constitutional provisions.

The Supreme Court has always emphasized the barriers to employment opportunities, and the necessity to provide equal employment opportunities. This after all is the purpose of the legislation. *See again McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.E.2d 668, and *Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158.

The plaintiffs did not show that the work in the classification they sought was equal to that in which they found themselves. The only showing was that the City's system of pay and classification provided equal pay for equal work. The proof demonstrated that the City provided equal opportunities for women including plaintiffs and the class. The parity plaintiffs seek is not a remedy which the courts can now provide.

AFFIRMED.