EQUAL EMPLOYMENT OPPORTUNI-
TY COMMISSION, Plaintiff-Appellee,
Cross-Appellant,

and

Carol Cole and Luvenia Long,
Plaintiffs-Intervenors-Appellees,
Cross-Appellants,

v.

MADISON COMMUNITY UNIT
SCHOOL DISTRICT NO. 12,
Defendant-Appellant, Cross-Appellee.

Nos. 86–1213, 86–1303 and 86–1381.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 21, 1986.

Decided May 5, 1987.

Rehearing and Rehearing En Banc
Denied June 18 and July 9, 1987.

John B. Murphey, Ancel, Glink, Diamond, Murphy & Cope, P.C., Chicago, Ill., for Madison Community Unit School Dist. No. 12.

Karen MacRae Smith, EEOC Office of General Counsel, Washington, D.C., Bruce Goldstein, Edwardsville, Ill., for E.E.O.C., for appellee.

Before POSNER and FLAUM, Circuit Judges, and GRANT, Senior District Judge.*

POSNER, Circuit Judge.

The Equal Employment Opportunity Commission brought this suit against the school district of Madison, Illinois, charging that the district was paying female athletic coaches in its high school and junior high school less than male coaches, in violation of the Equal Pay Act of 1963. That Act, so

---

* Hon. Robert A. Grant of the Northern District of Indiana, sitting by designation.

far as relevant to this case, forbids an employer to

> discriminate ... between employees on the basis of sex by paying wages to employees ... at a rate less than the rate at which he pays wages to employees of the opposite sex ... for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to ... (iv) a differential based on any other factor other than sex.

29 U.S.C. § 206(d)(1). Carol Cole and Luvenia Long, two of the four women who are the alleged victims of the discrimination, intervened in the EEOC's suit and added counts under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* (employment discrimination), and section 1 of the Civil Rights Act of 1871, now 42 U.S.C. § 1983 (deprivation of federal rights—in this case, the right to equal protection of the laws—under color of state law).

After a bench trial, the district judge held that the defendant had violated the Equal Pay Act, and had done so willfully, thus extending the statute of limitations to allow the award of three years of back pay rather than just two. See 29 U.S.C. § 255(a). But he refused to double these damages; the Act gives the district judge discretion not to double if the violation of the Act was "in good faith and [with] ... reasonable grounds for believing that [the defendant's] act or omission was not a violation." 29 U.S.C. §§ 260, 216(b). The judge dismissed the section 1983 equal-protection count and the Title VII "disparate treatment" ( = intentional discrimination) charge on the ground that the discrimination had not been intentional, but he found a "disparate impact" violation of Title VII and held that Cole and Long were entitled to an injunction against it. The parties later negotiated a consent decree which settled the Title VII injunction claim and is not challenged in this appeal. Finally, the judge awarded Cole and Long some $28,000 in attorney's fees under the Equal Pay Act and Title VII.

The school district has appealed, challenging everything but the consent decree. The EEOC has cross-appealed, seeking to have the damages doubled. Finally, Cole and Long challenge the district court's finding that there was no intentional discrimination; they hope to get both comprehensive compensatory damages and punitive damages for their equal protection claim, and not just the back pay they were awarded under the Equal Pay Act.

The trial brought out the following facts:

Long was paid substantially less for coaching girls' track than Steptoe, a man, was paid for coaching boys' track. Although the boys' track program included more students and had more meets than the girls', Steptoe had two assistant coaches compared to Long's one, and as a result Long and Steptoe devoted approximately equal time to their coaching jobs. Long also coached the girls' tennis team, and Jakich, a man, the boys' tennis team; and Jakich was paid more than Long even though there were no significant differences between the teams in number of students, length of season, or number of practice sessions; however, the boys' team played almost twice as many matches as the girls' team. Long was also assistant coach of the girls' basketball team one year and received lower pay than Tyus, the male assistant coach of the boys' track team. The district judge found that the work of the two assistant coaches was substantially equal and required the same skill, effort, and responsibility—except that Long worked longer hours than Tyus.

Cole, who coached the girls' volleyball, girls' basketball, and girls' softball teams, was paid less for coaching volleyball than the male coach of the boys' soccer team, less for coaching basketball than the male coach of the boys' soccer team, and less for coaching softball than the male coach of the boys' baseball team. Also, as assistant coach of the girls' track team she was paid less than the assistant coach of the boys' track team. In all of these cases the judge found that the work of the female coach and her male counterpart was the same in

skill, effort (including time), and responsibility. Any potential differences in effort and responsibility stemming from the fact that the boys' teams were sometimes larger and played longer seasons were, he found, offset by the fact that the head coaches of the boys' teams had more assistants than their female counterparts.

The picture with respect to the other two female coaches on whose behalf the EEOC sued is similar.

■ The first question we must decide is whether the pairs of jobs that the district judge compared in finding unequal pay are sufficiently similar to be "equal work" within the meaning of the Equal Pay Act. The Act is not a general mandate of sex-neutral compensation. It does not enact "comparable worth"—the principle that wages should be based on "objective" factors, rather than on market conditions of demand and supply which may depress wages in jobs held mainly by women relative to wages in jobs held mainly by men. See *American Nurses' Ass'n v. Illinois*, 783 F.2d 716, 718–20 (7th Cir.1986). A female secretary paid less than a male janitor cannot complain under the Equal Pay Act that the disparity in their wages is not justified by "objective" factors such as differences in skill, responsibility, and effort. "We do not expect the Labor Department people to go into an establishment and attempt to rate jobs that are not equal. We do not want to hear the Department say, 'Well, they amount to the same thing,' and evaluate them so they come up to the same skill or point. We expect this to apply only to jobs that are substantially identical or equal." 109 Cong.Rec. 9197 (1963) (remarks of Congressman Goodell, one of the Act's sponsors). Cf. *Lemons v. City & County of Denver*, 620 F.2d 228, 229 (10th Cir.1980). The Act requires equal pay only when men and women are performing "equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 206(d)(1). The working conditions of a janitor are different from those of a secretary, and so are the skills and responsibilities of the two jobs. The Act does not prohibit paying different wages even if the result is to pay a woman less than a man and by doing so "underpay" her because the difference in the wage rate is greater than necessary to compensate the male for any greater skill, effort, or responsibility required by, or any inferior working conditions encountered in, his job.

Thus the jobs that are compared must be in some sense the same to count as "equal work" under the Equal Pay Act; and here we come to the main difficulty in applying the Act: whether two jobs are the same depends on how fine a system of job classifications the courts will accept. If coaching an athletic team in the Madison, Illinois school system is considered a single job rather than a congeries of jobs, the school district violated the Equal Pay Act prima facie by paying female holders of this job less than male holders, and the only question is whether the district carried its burden of proving that the lower wages which the four female coaches received were lower than the wages of their male counterparts because of a factor other than sex. If on the other hand coaching the girls' tennis team is considered a different job from coaching the boys' tennis team, and *a fortiori* if coaching the girls' volleyball or basketball team is considered a different job (or jobs) from coaching the boys' soccer team, there is no prima facie violation. So the question is how narrow a definition of job the courts should be using in deciding whether the Equal Pay Act is applicable.

We can get some guidance from the language of the Act. The Act requires that the jobs compared have "similar working conditions," not the same working conditions. This implies that some comparison of different jobs is possible. It is true that similarity of working conditions between the jobs being compared is not enough to bring the Act into play—the work must be "equal" and the jobs must require "equal" skill, effort, and responsibility, as well as similar working conditions. But since the working conditions need not be "equal," the jobs need not be completely identical.

Estimating and comparing the skill, effort, responsibility, and working conditions in two jobs are factual determinations. See, e.g., *Epstein v. Secretary, U.S. Dept. of Treasury*, 739 F.2d 274, 277–78 (7th Cir.1984). We can overturn them, therefore, only if they are clearly erroneous. See Fed.R.Civ.P. 52(a); cf. *Wright v. United States*, 809 F.2d 425, 428 (7th Cir. 1987). The district judge found (among other things) that coaching a girls' tennis team is sufficiently like coaching a boys' tennis team, coaching a girls' softball team is sufficiently like coaching a boys' hardball team, and, indeed, coaching a girls' volleyball or basketball team is sufficiently like coaching a boys' soccer team, to allow each pair of jobs to be described as involving equal work, as requiring equal skill, effort, and responsibility, and as being performed under similar working conditions. If these assessments are not clearly erroneous, we must uphold them, regardless of what we might think the correct assessment as an original matter.

There are pitfalls in allowing *any* comparisons between different jobs, and they are illustrated by this case. One is a tendency to focus entirely on the measurable differences and ignore the equally or more important but less readily measurable ones. The witnesses in this case concentrated on the amount of skill and time required for coaching girls' and boys' teams and paid little attention to responsibility. It may be true that because the boys' teams tend to have more assistant coaches than the girls' teams, the head coaches of the boys' teams put in no more time than the head coaches of the girls' teams even when the boys' teams are larger and play more matches. But normally there is greater responsibility (one of the dimensions in which the statute requires equality between the jobs compared) if you have a staff than if you don't. That is one reason why the president of a company is paid more than a junior executive who, lacking staff assistance, may work longer hours. "Direction of others as well as value of commodity worked upon and overall importance of assignment may be considered as part of an employees' [sic]

job responsibility." 109 Cong.Rec. 9209 (1963) (remarks of Congressman Goodell).

Another difference tends to be ignored when effort, which is hard to measure, is equated to time, which is easy to measure. Boys and girls differ on average in strength, speed, and perhaps other dimensions of athletic ability; there may also be important differences in their attitudes toward athletic competition. See, besides the extensive scholarly literature on this subject illustrated by Lever, *Sex Differences in the Games Children Play*, 23 Soc.Probs. 478 (1976), and by Gilligan, *In a Different Voice: Psychological Theory and Women's Development* 9–11 (1982), the deposition of coach Michael Lasiter in the present case. The differences between boys and girls in athletic aptitude and interest may make coaching a boys' team harder—or easier—than coaching a girls' team; there can be no confidence that the two jobs require equal effort. The district judge set aside this consideration by ruling that a difference in the sex of students, customers, etc. can't be used to justify a pay difference under the Equal Pay Act. But this is wrong. The reference to "factor other than sex" refers to the sex of the employee, not the sex of the employer's customers, clients, or suppliers. See *Kenneweg v. Hampton Township School Dist.*, 438 F.Supp. 575, 577 (W.D.Pa.1977); 29 U.S.C. §§ 206(d), 203(e); 109 Cong.Rec. 9206 (1963) (remarks of Representative Goodell); cf. *Hodgson v. Robert Hall Clothes, Inc.*, 473 F.2d 589 (3d Cir.1973). Suppose that the school district happened to have just male, or just female, coaches and paid coaches more for coaching boys' teams than girls' teams. Men paid less than other men for coaching, or women paid less than other women, could not complain of a violation of the Equal Pay Act. The Act was passed early in the history of public regulation of sex discrimination—so early that a principal sponsor, Congressman Goodell, could quote with approval the following evaluation of the woman's position in American life:

The emancipation of women was an achievement of the 19th century and the early decades of the 20th.... With

emancipation the feminist movement came to an end. The victory was so complete that any girl who now doubts the equality of the sexes probably assumes the natural superiority of women. Having achieved emancipation and equality of opportunity, women did a sharp about-face and during the 1950's "the thundering hoofs of women stampeding back to the nest" were heard.

109 Cong.Rec. 9208 (1963). The Act did not seek to eliminate whatever differences between the sexes might make it harder to coach a boys' team than a girls' team. If it is harder (we are not saying it is harder—we are just discussing possibilities), the statutory requirement of equal effort is not met and the differential in pay is outside the scope of the Act.

Nevertheless, we are unwilling to hold that coaches of girls' and boys' teams can never be found to be doing equal work requiring equal skill, effort, and responsibility and performed under similar working conditions. Above the lowest rank of employee, every employee has a somewhat different job from every other one, even if the two employees being compared are in the same department. So if "equal work" and "equal skill, effort, and responsibility" were taken literally, the Act would have a minute domain. Of course, opponents of an equal pay act may have been strong enough to block the passage of a strong bill—and, to some extent, they were. Remarkably, considering that the Act was enacted almost a quarter of a century ago, its proponents wanted to enact the principle of "comparable worth." See, e.g., 109 Cong.Rec. 9200 (1963) (remarks of Congressman Dent). But they were beaten back. In the words of Congressman Goodell, "Last year when the House changed the word 'comparable' to 'equal' the clear intention was to narrow the whole concept. We went from 'comparable' to 'equal' meaning that the jobs involved should be virtually identical, that is, they would be very much alike or closely related to each other." Id. at 9197.

But the words "very much alike," "closely related," or, as the cases sometimes say, "substantially equal"—even the words "virtually identical"—are not synonymous with "identical." See, e.g., Horner v. Mary Institute, 613 F.2d 706, 713 (8th Cir. 1980); Marshall v. Building Maintenance Corp., 587 F.2d 567, 569 (2d Cir.1978) (per curiam); Brennan v. City Stores, Inc., 479 F.2d 235, 238–41 (5th Cir.1973). There is a gray area, which we must be vigilant to police, between "very much alike," which is within the scope of the Act, and "comparable," which is outside; for it is plain that Congress did not want to enact comparable worth as part of the Equal Pay Act of 1964. "Differences in pay between groups or categories of employees that contain both men and women within the group or category are not covered by this act." 109 Cong.Rec. 9209 (1963) (remarks of Congressman Goodell). "Congress did not intend to put either the Secretary [of Labor, the original enforcer of the Act] or the courts in the business of evaluating jobs and determining what constituted a proper differential for unequal work." Hodgson v. Corning Glass Works, 474 F.2d 226, 231 (2d Cir.1973) (Friendly, J.), aff'd under the name Corning Glass Works v. Brennan, 417 U.S. 188, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974).

The courts have thus had to steer a narrow course. The cases do not require an absolute identity between jobs, but do require substantial identity. The line is a fine, perhaps imperceptible, one. Compare Marshall v. Dallas Independent School Dist., 605 F.2d 191 (5th Cir.1979) (heavy and light custodial jobs not equal within meaning of Act); Marshall v. Building Maintenance Corp., 587 F.2d 567 (2d Cir. 1978) (per curiam) (light-duty and heavy-duty cleaning—ditto), and Angelo v. Bacharach Instrument Co., 555 F.2d 1164 (3d Cir.1977) (light and heavy assembling—ditto), with Brock v. Georgia Southwestern College, 765 F.2d 1026, 1033–36 (11th Cir. 1985) (teaching different subjects, and teaching physical education but with different coaching duties—intramural athletics program versus intercollegiate basketball team—held to be equal within meaning of Act), and Thompson v. Sawyer, 678 F.2d

257, 274–76 (D.C.Cir.1982) (different bindery jobs—ditto).

Whatever answer we might give, if we were the finders of fact, to the question whether coaching a girl's tennis team and coaching a boy's tennis team are sufficiently alike to be equal work within the meaning of the Act, we cannot, on the record compiled in this case (a potentially important qualification), deem the district court's determination clearly erroneous. His error in thinking that a difference in the sex of the teams could not be used to ground a difference in the pay of their coaches is immaterial. The record contains no evidence that the sex of the team affects the skill, effort, responsibility, or working conditions of coaching. And while it is odd that the greater number of assistant coaches of boys' compared to girls' teams should be thought a factor tending to equate the jobs of the head coaches of boys' and girls' teams rather than to show that coaching a boys' team is a more responsible position, there is also no evidence that—in the Madison school system, anyway—having an assistant coach is viewed as anything more than a timesaver for the head coach. And there is evidence that head coaches of boys' teams have more assistants in relation to the number of boys on the team than head coaches of girls' teams have in relation to the number of girls.

Boys' teams might of course be greater revenue producers than girls' teams. *Jacobs v. College of William & Mary*, 517 F.Supp. 791, 797 (E.D.Va.1980), aff'd without opinion, 661 F.2d 922 (4th Cir.1981), relied on this factor; see also *Hodgson v. Robert Hall Clothes, Inc., supra*. But *Jacobs* involved college teams. Madison has only one revenue-producing team, the boys' high-school basketball team, and the plaintiffs do not complain about the higher wage that the head coach of that team received—they acknowledge that his job is not the same as that of any female coach. Concerning the coaching jobs that were compared, male and female coaches alike testified that the skill, effort, and responsibility required were the same and the working conditions also the same—not merely similar, which is all the Act re-

quires. Some of the boys' teams were larger than the girls' teams with which they were compared, and competed more often, but apparently any additional effort or responsibility involved in coaching a larger team or one that competes more often was cancelled out by a combination of more assistant coaches for the larger teams and more practice sessions (requiring the same time and effort) for teams that compete less often.

For those of us whose knowledge of athletic coaching is confined to newspaper and television accounts of the travails of professional and college coaches, the idea of homogenizing the coaching profession in the manner attempted by the plaintiffs and accepted by the district judge is discordant. But we must, by an effort of imagination, place ourselves in a different world, that of small-town high-school and junior-high-school athletics, where the coach's task is not to compete for money in a high-pressure environment but to impart elementary athletic skills and norms of sportsmanship to adolescents. Given these modest goals, a finding that the coaching of boys' and of girls' tennis involves inconsequential differences in skill, effort, responsibility, and working conditions is not so improbable that we can set it aside, under the deferential clear-error standard that governs appellate review of findings of fact, by substituting our personal impressions for the evidence introduced at trial. Compare *Horner v. Mary Institute, supra*, 613 F.2d at 714, where the evidence showed that a male physical education teacher had a different job from a female physical education teacher because he was responsible for curricular development and she was not, with *Brock v. Georgia Southwestern College, supra*, 765 F.2d at 1035, where the evidence showed that two physical education teachers, one of whom also coached the intramural athletics program and the other the intercollegiate basketball team, nevertheless had substantially equal jobs.

Although we conclude that there is no objection in principle to comparing different coaching jobs, the record of the present case does require us to distinguish between

coaching boys' and girls' teams of the same sport and coaching boys' and girls' teams of different sports. The judge equated coaching girls' basketball and girls' volleyball to coaching boys' soccer (and, in the assistant-coach comparisons, girls' basketball with boys' track), without regard for the fact that Madison treats coaching a different sport as a different coaching job irrespective of the sex of either the coach or the team. In the 1980 academic year, for example, the boys' track coach received $1,140 each while the boys' soccer coach received only $840 and the boys' tennis coach even less—$780. (These are head-coach salaries; the salary for the assistant coach of the boys' track team was $835 and for the assistant coach of the boys' soccer team $600; there was no assistant tennis coach.) In other words, there is not a single job classification such as "head coach" or "assistant coach"; the wage varies by the sport. The judge was therefore arbitrary in assuming that if the coach of the girls' volleyball team or basketball team had been male, he would have been paid as much as the boys' soccer coach. (The plaintiffs concede, as we said, that coaching the boys' basketball team is not comparable to coaching the girls' basketball team.) We are willing to assume that hardball and fast-pitch softball—similar sports played under similar rules—are the same sport for purposes of the Equal Pay Act. See *Brennan v. Woodbridge School District*, 74 Labor Cases ¶ 33,121, at p. 46,627 (D.Del.1974). But given the wage differentials among the male coaches, we cannot make this assumption for volleyball and soccer, or for basketball and soccer. Another consideration is the arbitrariness of the particular comparisons suggested by the plaintiffs. In 1980 Long, as girls' track coach, received the same wage as the male coach of the boys' soccer team. How was the school district to know that a court would think basketball and soccer or volleyball and soccer a closer pair than track and soccer? We vacate the findings of the district judge with respect to a violation of the Equal Pay Act in the comparison between boys' soccer and girls' volleyball, boys' soccer and girls' basketball, and boys' track and girls' basketball.

With this exception we conclude that the plaintiffs did establish a prima facie case of violation of the Equal Pay Act, and we move on to consider defenses, of which only one ("factor other than sex") is relevant. Madison argues that the sex *of the teams* is a factor other than sex, and though the district court thought this wrong, we disagree as we have said; the factor other than sex to which the Act refers is a factor other than the *employee's* sex. But this point cannot help Madison. We do not understand it to be arguing that it has carried its burden of proving "factor other than sex" as an affirmative defense. Its quarrel is with the district court's suggestion that the sex of the teams can't be taken into account in determining whether the coaching jobs are equal work; it can be. Furthermore, the language of the statute ("except where such payment is made pursuant to ... a differential based on any factor other than sex") makes clear that the pay differential must be caused by the other factor, and not by the sex of the employees who receive the different pay. See generally *Covington v. Southern Illinois University*, 816 F.2d 317, 321–325 (7th Cir.1987). If Madison, having decided for reasons unrelated to the sex of the coaches that coaches of male teams should be paid more than coaches of female teams, neither prohibited nor even discouraged women from coaching male teams, the difference in pay between male coaches of boys' teams and female coaches of girls' teams would be due to a decision unrelated to the sex of the coaches. But Madison discouraged women, including Cole and Long, from applying to coach boys' teams, which not only adds a reason related to the sex of the coaches for a difference in pay between men and women to a reason related solely to the sex of the team members, but also casts doubt on the bona fides of the school district's claim to have based the difference in the pay of coaches of male and of female teams solely on the sex of the team members. Cf. *Bence v. Detroit Health Corp.*, 712 F.2d 1024, 1029–31 (6th Cir.1983); *id.* at 1032–33

(dissenting opinion). There was contrary evidence: a woman once was hired to coach the boys' tennis team and was paid the same as her male predecessor; several times men were hired to coach girls' teams and paid the same as female coaches of those teams. But such job offers were very rare prior to the EEOC's investigation, and the district judge was entitled to find their evidentiary significance outweighed by the evidence that women were discouraged from applying to coach boys' teams.

The reason for discouraging women from coaching boys' teams was that the school authorities were concerned about the "locker room problem." This may or may not be a good reason (a question touched on later), but it does suggest that women receive less pay than men for doing what the district court found was equal work within the meaning of the Equal Pay Act because they are women; their sex makes them ineligible to receive the higher wage that men receive for equal work. Even if the school district is entitled to insist that coaches and coached be of the same sex, if the work of each coach is the same and the reason for the difference in pay is the difference in the sex of the coach, the Equal Pay Act is violated. An employer cannot divide equal work into two job classifications that carry unequal pay, forbid women to compete for one of the classifications, and defend the resulting inequality in pay between men and women by reference to a "factor other than [the] sex" of the employees. Cf. 29 C.F.R. § 800.114(a). It would not be the sexual segregation that had caused the inequality in pay, but a decision to pay men more for doing the same work as women (albeit with a "clientele" of a different sex from the women's "clientele").

Another subsection of the Equal Pay Act, 29 U.S.C. § 206(d)(1)(i), not in issue in this case, allows a pay difference pursuant to a bona fide seniority scheme. If the employer prevents a woman from obtaining additional seniority, for no other reason than that she is a woman, then the difference in pay between her and more senior men is due not to the seniority scheme but

to her sex, and the defense fails. That is analogous to the present case.

■ So the school district violated the Equal Pay Act; the next question is whether the violation was willful, which would extend the period of back pay from two to three years. A violation is "willful" under the Act if the defendant either knew he was violating the Act or was indifferent to whether he was violating it or not (and therefore "reckless"). *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 125–29, 105 S.Ct. 613, 623–26, 83 L.Ed.2d 523 (1985), and *Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 310–11 (7th Cir. 1986), so hold, and though neither of these cases involved a suit under the Equal Pay Act, this doesn't matter. The Age Discrimination in Employment Act, under which *Thurston* was decided, incorporates (see 29 U.S.C. § 626(b)) the remedial provisions of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq*. The Equal Pay Act is an amendment to the Fair Labor Standards Act, and hence is subject to the same remedial provisions. See 29 U.S.C. §§ 206(d), 216(b). *Walton* was decided under a different substantive provision of the Fair Labor Standards Act, so again the same remedial provisions were involved as in this case.

The district judge said that "Madison was aware of the requirements of the Equal Pay Act at the time it set the wages of the female coaches," and "aware that its conduct was governed by the Equal Pay Act." This might mean only that Madison knew it was subject to the Act, which is not the same thing as knowing it was violating the Act or not caring whether it was or not. Elsewhere in his opinion the judge found that Madison had a policy (as we have said) of hiring only male coaches to teach male teams, that the female coaches had complained about their lower pay, and that after the EEOC began its investigation in 1980, Madison had—in order to "muddy the waters," as the court put it—hired male coaches to coach girls' teams. None of this is evidence of willfulness. Until today, the law in this or any circuit was foggy on whether the Equal Pay Act can reach pay

disparities between coaches of boys' and of girls' teams. Maintaining a defensible view of what a statute requires is not the same thing as willfully violating the statute; and Madison was not required to abandon its view merely because the female coaches challenged it and persuaded the EEOC to conduct an investigation. After the investigation began, the school district began appointing more men to coach girls' teams for the same pay as the women coaches received, and maybe this was done to strengthen the school district's case that it was not discriminating between male and female coaches of the same teams. But efforts to bring one's conduct into conformity with one's litigating posture are not evidence of willful noncompliance with the law. Here they are evidence of compliance with a defensible although in our judgment incorrect conception of what a less than perfectly clear law required.

The judge also made a finding that Madison had "willfully deemphasized the girls' sports." The Equal Pay Act does not require school districts to give girls' sports equal prominence with boys'. The failure to do so might violate another statute, but the Equal Pay Act does not require employers to equalize the work performed by their male and female employees; it just forbids employers to pay women less than men for the same work.

■ Although the judge found that Madison's violation of the Equal Pay Act had been willful, he refused to award double damages. As the plaintiffs point out, this conclusion is inconsistent with our recent holding that it is easier to get double damages under the Act than to extend the statute of limitations. *Walton v. United Consumers Club, Inc., supra,* 786 F.2d at 312. To extend the statute of limitations a plaintiff must prove a willful violation; to avoid double damages the defendant must prove that he was acting in the sincere and reasonably grounded belief that his conduct was lawful, and if he proves this the district court "may, in its sound discretion" —not must—award only single damages. 29 U.S.C. § 260. If Madison was acting reasonably and in good faith, it could hard-

ly be guilty of violating the law either intentionally or with reckless disregard for the legality of its conduct. It is not easy to figure out how the district judge resolved this paradox in his mind. He gave no reason for declining to award double damages, and the statute gives him no discretion to "dedouble" unless the defendant proves that it was acting reasonably and in good faith. Probably the judge misunderstood the statutory standard of willfulness (as the passages we quoted earlier from his opinion suggest) but was persuaded that the defendants had acted reasonably and in good faith in the sense relevant to the double-damages provision and that he should exercise his discretion not to double. The judge's comment about "muddy[ing] the waters" may seem to negate reasonableness but apparently was not intended to do so, or the judge would have awarded double damages; in any event, it has no basis, and there is no other evidence of bad faith or unreasonable conduct. Madison resisted the women's demands for higher pay on the basis of a sincerely held and reasonable, though ultimately rejected, interpretation of the Equal Pay Act.

■ That disposes of the Equal Pay Act issues, and we move on to Title VII. Title VII expressly forbids discrimination "against any individual with respect to his compensation," 42 U.S.C. § 2000e–2(a)(1), and is therefore a natural vehicle for a suit claiming that a member of a protected group, such as a black or a woman, is being paid less than another employee on account of race or sex. See, e.g., *Liberles v. County of Cook,* 709 F.2d 1122 (7th Cir.1983). Where the plaintiff is a woman, however, and where her only complaint is discrimination in pay, there is a considerable overlap between Title VII and the Equal Pay Act. So we must try to be precise about what Title VII did and did not add to the Equal Pay Act counts in this case. The EEOC, whose suit was limited to the Equal Pay Act, sought on behalf of the female coaches at Madison the elimination for the future of the pay disparities between them and the male coaches, and the payment of back pay (doubled if possible) for two (or if possible three) years in the past. All of

this relief is authorized by the Equal Pay Act. Although the court did not enter a contested decree for injunctive relief, it held that the plaintiffs were entitled to such relief and the plaintiffs then negotiated a consent decree which, in its principal provisions, forbids the pay disparities that the district judge found were unlawful. The only significant provision in the consent decree that goes beyond the Equal Pay Act is a provision forbidding Madison to retaliate against anyone for asserting rights under Title VII. Another provision of the decree forbids retaliating for assertion of rights under the Equal Pay Act, but that relief is available under that Act. See 29 U.S.C. § 215(a)(3); *Love v. RE/MAX of America, Inc.*, 738 F.2d 383, 387 (10th Cir. 1984). The provision requiring the appointment of some additional assistant coaches—a provision apparently designed to give head coaches of girls' teams as much assistance as head coaches of boys' teams that are no larger now receive—appears to be ancillary to the Equal Pay Act claim.

No one is challenging any of these provisions. So if we had affirmed all the district judge's findings made under the Equal Pay Act, the only reason for getting into the question whether the school district violated Title VII as well as the Equal Pay Act is that the answer might affect the propriety of the award of attorney's fees to Cole and Long, the plaintiffs in the Title VII part of the case. But we have vacated several findings (relating to the comparison of different sports) and have therefore cut down the award of back pay. The question then arises whether the full award of back pay might be supportable by the district judge's finding that Madison had violated Title VII as well as the Equal Pay Act; for of course back pay is available under the former as well as the latter statute.

The judge's finding was based on the "disparate impact" approach to proving a violation of Title VII: a practice that, although not intended to discriminate against a protected group, has a disproportionate adverse impact on that group is unlawful unless there is a powerful justification for the practice. *Dothard v. Rawlinson*, 433 U.S. 321, 97 S.Ct. 2720, 53 L.Ed.2d 786 (1977). The alternative approach, of course, is to prove intentional discrimination ("disparate treatment"), but the district court found that Madison had not engaged in intentional discrimination. We shall have to consider whether the district court was justified in upholding the Title VII claim on a theory of disparate impact and, if not, whether the court's finding that there was no disparate treatment is justifiable.

Merely paying different wages for different jobs (coaching basketball and coaching soccer being, as we have held, different jobs and therefore outside the boundaries of the Equal Pay Act) cannot violate the prohibition against sex discrimination in Title VII on the basis of disparate impact. This conclusion is entailed by our holding in *American Nurses' Ass'n v. Illinois, supra*, 783 F.2d at 719–23, that comparable worth is not actionable under Title VII. (It may also be compelled by the Bennett Amendment to Title VII—the last sentence in 42 U.S.C. § 2000e–2(h)—but, as in *American Nurses' Ass'n*, see 783 F.2d at 723, we need not decide that question.) The term "comparable worth" is, as noted earlier in this opinion, short-hand for the view that paying higher wages in jobs held mostly by men than in jobs held mostly by women is discriminatory and improper unless the difference is justified by demonstrable differences in skill, responsibility, effort, or working conditions; it is no defense that men and women in the same jobs receive the same wages and that women are neither excluded from the higher-paying jobs by some criterion that cannot be justified on sex-neutral grounds of business need, nor otherwise steered into the lower-paying jobs by tactics for which the employer is responsible. Insofar as they are challenging different wages in coaching jobs that we have held to be different jobs (such as coaching basketball and coaching soccer), yet neither relying on a theory of intentional discrimination nor attacking some criterion that excludes them from the higher-paying coaching jobs, Cole and Long are making a comparable worth claim—a claim that the different wages in

the different jobs are not justified by differences in skill, responsibility, etc. *American Nurses' Ass'n* blocks this claim. Granted, there is some evidence of steering, as we saw earlier; but the plaintiffs—who apparently do not want to coach boys' teams—do not seek any relief against steering.

■ The defeat of the disparate-impact attack on different wages for different work is not fatal, however, if Cole and Long have shown, contrary to the district court's view, that they are victims of deliberate discrimination in being paid less than men in both similar and dissimilar coaching jobs. If an employer, knowing that a particular job is predominantly (or entirely) occupied by women, and wanting to pay women less than men, does pay them less, his conduct is actionable under Title VII even if the women are doing a different kind of work than the men. See *County of Washington v. Gunther*, 452 U.S. 161, 101 S.Ct. 2242, 68 L.Ed.2d 751 (1981). Cole and Long argue that the district judge's finding that the discrimination against them was unintentional is clearly erroneous. We disagree. Although there is evidence as we have said that the school district steered women into the lower-paid, female coaching jobs, and such steering could of course violate Title VII, the district judge was not required to find, and did not find, that the scattered evidence of steering added up to intentional discrimination. While the school district failed to prove that the pay disparities were due to factors other than sex, it doesn't follow that Cole and Long carried their burden of proving that the disparities were pursuant to a deliberate effort to pay women less than men because they are women. The burden of persuasion in a Title VII case remains on the plaintiff, although the burden of proving that unequal pay for equal work is due to a factor other than sex and hence does not violate the Equal Pay Act is on the defendant because the exception for a factor other than sex is an affirmative defense under that Act. *Plemer v. Parsons-Gilbane*, 713 F.2d 1127, 1136–37 (5th Cir.1983); cf. *Benzies v. Illinois Dept. of Mental Health & Developmental Disabilities*, 810 F.2d 146, 148 (7th Cir.1987). It may be significant that the consent decree contains no prohibition against steering.

■ We are aware that several cases have held that where a case that could have been brought under the Equal Pay Act is brought under Title VII instead, the employer who wants to avail himself of an Equal Pay Act defense (such as "factor other than sex") has the burden of persuasion. See *Gunther v. County of Washington*, 623 F.2d 1303, 1319 (9th Cir.1979), aff'd on other grounds, 452 U.S. 161, 101 S.Ct. 2242, 68 L.Ed.2d 751 (1981); *Kouba v. Allstate Ins. Co.*, 691 F.2d 873, 875 (9th Cir.1982); *McKee v. Bi-State Development Agency*, 801 F.2d 1014, 1019 (8th Cir.1986); contra, *EEOC v. Sears, Roebuck & Co.*, 628 F.Supp. 1264, 1328–32 (N.D.Ill.1986); dubitante, *Marcoux v. State of Maine*, 797 F.2d 1100, 1105–06 (1st Cir.1986). Those cases, whatever their merit as an original matter (on which we express no view), have no application here. The Equal Pay Act is inapplicable if the work is not substantially the same and that is the situation with regard to Cole's and Long's claims to have been discriminated against in being paid less than men in dissimilar coaching jobs. The issue regarding these claims is whether the discrimination by the school district was deliberate, and the burden of persuasion on that issue remains on the plaintiffs, unaided by anything in the Equal Pay Act.

Another possible way of fitting the case to the Title VII mold, however, would be to view the reluctance of the Madison school authorities to hire women to coach boys' teams as evidence of a discriminatory practice vulnerable to a claim of disparate impact. Setting to one side as we do throughout this opinion the bearing of the Bennett Amendment, a challenge to a practice that relegates women to lower-paying jobs need not run afoul of the rule that "comparable worth" is not actionable under Title VII; for the practice can be enjoined without putting the district judge in the business of fixing wages. See *Colby v. J.C. Penney Co.*, 811 F.2d 1119, 1126 (7th Cir.1987). But this case was not tried as a case of job exclusion as distinct from pay disparity;

evidence of job exclusion was presented only to undermine the school district's argument that the difference in the pay of the male and female coaches merely reflected the sex of the teams they coached. When a plaintiff claims, not that two different jobs should carry the same pay, but that he should not be kept out of the higher-paying job by some criterion which even if not deliberately discriminatory has no business justification strong enough to outweigh its discriminatory impact, he states a claim for relief under the disparate-impact approach. Only when he wants to remain in his job but have its salary raised is he in danger of having his claim dismissed as being one for comparable worth. Cole and Long are not complaining that they were not allowed to coach boys' teams; so far as we know they don't want to coach boys' teams; they just want the same pay for coaching girls' teams as coaches of boys' teams receive. Their complaint is pay disparity rather than job exclusion.

This conclusion may seem inconsistent with our earlier discussion of the "locker room problem." If the school district discourages women from coaching boys' teams, this might seem to be, prima facie, sex discrimination, and the issue would then be whether the locker room problem was serious enough to make being a man a bona fide qualification for coaching boys' teams. This would be a permissible approach if Cole and Long were complaining about not being allowed to coach boys' teams, but they are not. They are complaining about being paid less for coaching girls' teams than men were paid for coaching boys' teams. Madison has tried to use the sex of the teams to show that the work of male and female coaches was not the same, and has failed. Cole and Long have tried to use the locker room problem to show that they are victims of intentional discrimination and (bearing the burden of proof) have failed, too. The locker room problem cannot be used to show that they were excluded from job opportunities; they didn't want to coach boys' teams.

From what we have said it should be clear that we also reject Cole and Long's argument that the district judge erred in dismissing their claim of violation of the equal protection clause, which (at least so far as relevant here) forbids only intentional discrimination. *Washington v. Davis*, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976).

The last issue is Cole and Long's entitlement to an award of attorney's fees. See 42 U.S.C. § 2000e-5(k). Since they prevailed under the Equal Pay Act, their claim for such an award may seem straightforward regardless of their limited (really, negligible) success under Title VII; for the Equal Pay Act directs the court to award to the plaintiff, in addition to any judgment, a reasonable attorney's fee to be paid by the defendant, see 29 U.S.C. § 216(b). But matters are more complicated. Cole and Long should never have been allowed into the Equal Pay Act phase of this litigation. The Act provides, in words that could not be clearer, that "the right provided by this subsection to bring an action by or on behalf of any employee, and the right of any employee to become a party plaintiff to any such action, shall terminate upon filing of a complaint by" the EEOC. *Id.* The EEOC did file a complaint and therefore Cole and Long had no right, by intervention or otherwise, to become plaintiffs. See *Chapman v. City of Detroit*, 808 F.2d 459, 463 (6th Cir.1986). Since the statutory right to an award of attorney's fees is limited to plaintiffs, Cole and Long were not entitled to any such award.

They argue that since the school district did not object to their intervening until the district filed its brief in this court, the point has been waived. We disagree. When Congress unequivocally directs the federal courts not to entertain a certain type of claim, the courts are obligated to follow its direction; hence an utterly groundless suit does not engage the jurisdiction of these courts. See, e.g., *Hagans v. Lavine*, 415 U.S. 528, 537, 94 S.Ct. 1372, 1379, 39 L.Ed.2d 577 (1974); *Cronson v. Clark*, 810 F.2d 662, 665 (7th Cir.1987). We suspect that this principle extends to a case such as this, where the suit is not frivolous but the intervention of a party is

contrary to unequivocal congressional direction. But we need not decide that; for, in any event, no one gets attorney's fees for a frivolous involvement in a litigation. Cole and Long should never have been allowed in as parties; they should be treated as if they were never allowed in; and as nonparties they are not entitled to attorney's fees. The lawyers should have known their clients were not entitled to intervene in this lawsuit, and should not be rewarded for duplicating the EEOC's litigation expense when Congress had said clearly that such duplication is improper.

■ Thus the award of attorney's fees can be sustained if at all only under Title VII. A party who obtains relief by way of settlement is entitled to a reasonable attorney's fee even if, had the case not been settled, he would have lost—provided the suit was not frivolous, *Harrington v. De-Vito*, 656 F.2d 264, 266–67 (7th Cir.1981); *Palmer v. City of Chicago*, 806 F.2d 1316, 1323 (7th Cir.1986). We do not consider the Title VII claim frivolous. The problem, however, is to pick out the "real" Title VII relief from the relief obtained by the EEOC (with Cole and Long uninvited and unentitled guests) under the Equal Pay Act. Although the judge allowed equitable relief under Title VII only, he apparently did so through inadvertence, because the consent decree entered into to implement his order on equitable relief is primarily concerned with preventing future violations of the Equal Pay Act. The EEOC, though not a party to the Title VII claims, signed the decree along with Cole and Long. The main provisions of the decree forbid pay disparities. The only distinctly Title VII aspect of the consent decree is the prohibition against retaliating for exercise of rights conferred by Title VII. On remand the district judge must assess a reasonable (presumably very modest) attorney's fee for obtaining this provision. Cf. *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968) (per curiam).

■ Against this limitation Cole and Long argue that the pay disparities themselves, the core of the lawsuit, violate Title VII as well as the Equal Pay Act. With the question whether there was intentional discrimination resolved against the plaintiffs, the issue becomes whether the Bennett Amendment forecloses Title VII liability under a theory of disparate impact when the discrimination alleged is sex discrimination in compensation between the same jobs (we have already explained why such a claim must fail with regard to the coaching jobs that we have held are not the same jobs), even if the men and women whose wages are being compared are doing the same work. The Bennett Amendment disallows liability in such a case if the difference is due to a factor other than sex, and it might seem to follow that, if the difference isn't due to intentional discrimination, it must be due to something other than sex and therefore not be actionable. There are counterarguments, but we shall duck the whole question and assume, without deciding, that the pay disparities which we have found violated the Equal Pay Act (disparities in wages in coaching jobs that we have held are the same work within the meaning of the Equal Pay Act) also violated Title VII. Still, Cole and Long cannot obtain attorney's fees for duplicating the work of the EEOC in obtaining back pay and other relief against those disparities. The EEOC brought suit first, and the only thing that Cole and Long gained by challenging the same disparities under Title VII was a bit of additional relief in the consent decree. For that bit and that bit only are they entitled to be compensated. It is true that when the victim of discrimination intervenes in a Title VII suit brought by the EEOC, he may be entitled to attorney's fees for assisting in the suit; he is a proper party. See, e.g., *United States v. Terminal Transport Co.*, 653 F.2d 1016, 1021 (5th Cir.1981); *EEOC v. Strasburger, Price, Kelton, Martin & Unis*, 626 F.2d 1272 (5th Cir.1980); *EEOC v. Sage Realty Corp.*, 521 F.Supp. 263 (S.D.N.Y.1981). But that is not this case. Cole and Long improperly intervened in the EEOC's Equal Pay Act case. They should not be rewarded for this impropriety by receiving attorney's fees for helping to establish a violation of the Equal Pay Act.

The case must be remanded to recompute back pay (not only because of the shorter statute of limitations, but also because we have vacated some of the district court's findings of violation) and attorney's fees in accordance with this opinion; otherwise the decision of the district court is affirmed. No costs shall be awarded in this court.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH DIRECTIONS.